Filed 9/9/13  P. v. Mora CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055696 |
| v. | (Super.Ct.No. RIF146010) |
| CESAR ALBERT MORA, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Gary W. Brozio and Ifeolu E. Hassan, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

A jury found defendant Cesar Albert Mora guilty of assault with a deadly weapon, a knife, active participation in a criminal street gang, and possession of a shank while in custody. The jury also found a gang enhancement true on the assault conviction and in a separate trial found defendant had three prior serious felony convictions, three prior strikes, and three prison priors. Defendant was sentenced to 58 years to life, including 25 years to life for the assault conviction plus five years for the gang enhancement on the assault conviction. A 25-year-to-life term was imposed but stayed on the active gang participation conviction.

On this appeal, defendant claims the evidence is insufficient to support his active gang participation conviction and the gang enhancement on his assault conviction. Regarding the active gang participation conviction, he argues no rational fact finder could have concluded the Black Angels was a criminal street gang because the prosecution's gang expert did not testify, and no other evidence showed, that the primary activities of the Black Angels consisted of criminal acts listed in Penal Code section 186.22, subdivision (e).[1] Regarding the gang enhancement on the assault conviction, he argues no rational fact finder could have found he committed the assault for the benefit of, at the direction of, or in association with the Black Angels, because the evidence showed only that he stabbed the victim in a fight at a party. We reject these claims and affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II.  RELEVANT BACKGROUND

A. *Prosecution Evidence*

### 1. The Stabbing at the Party

On the evening of September 28, 2008, Carlos Arechiga hosted a birthday party by invitation only in the backyard of his Mira Loma home.  Around 30 guests were invited, and they were dressed "nicely" in black and white.  All of the guests were either friends of Carlos or members of his family.  The guests included Alejandro Alcaraz, Aldo Sanchez, Rolando Sanchez, Arnold Arechiga, and Jovan Garcia.  The backyard was well lit, and the guests came to the party through a side gate.

Around 10:00 p.m., uninvited people began to show up.  A "wave" of five or six uninvited people arrived first, then "they started coming in with girls and more younger guys started coming in."  They stood out because none of them were dressed for the party.  Eventually, between 12 and 15 uninvited people showed up and at that point Carlos began to get "more worried."  The uninvited people included defendant, Esteban Hernandez, and Armando Ledesma.

Around 1:00 a.m., some of the uninvited men were disrespectful towards Carlos's sisters.  In response, Carlos approached one of them and asked, "[W]ho invited you guys?"  A crowd began to gather.  The man did not respond, but simply looked behind Carlos as "if he was waiting for somebody to come."  Then, Hernandez aggressively pushed through the crowd until he was face-to-face with Carlos.  Hernandez had "BA" tattooed on the back of his head.

3

From the way Hernandez "barged in," Alcaraz "knew nothing good was going to come out of it," so he grabbed Hernandez from behind by the shoulders. At the same time, Aldo grabbed Hernandez from the front by his arm. As Alcaraz tried to push Hernandez away from Carlos, Alcaraz and Hernandez fell to the ground, and Hernandez "sliced" Alcaraz in the side and in the jaw with a box cutter. Around the time Alcaraz grabbed Hernandez, "the commotion started happening."

Aldo began to pull Hernandez off Alcaraz, but then he pulled back to look around for his girlfriend. As he looked around, he saw his brother Rolando running after defendant and two other men. Rolando tripped and fell, bringing one of the other two men down with him. Aldo ran over and began fighting with defendant and the other man until they ran out of the backyard. During this fight, defendant sliced Aldo in the left shoulder and back of the neck with a knife or box cutter.

Eventually, defendant, Hernandez, Ledesma, and the other uninvited people were forced out of the backyard. Hernandez turned around and threw objects towards the house, and Ledesma threw beer bottles. Hernandez, Ledesma, and defendant left together in a black car.

After the men left, Garcia found defendant's wallet, including his identification, and his cell phone in the driveway near the side gate to the backyard of the Arechiga residence. A knife was also found near where defendant and Aldo had been fighting. The police were called and Deputy Arturo Mendez and other officers were dispatched to

4

the Arechiga residence about 1:15 a.m.  At the residence, Deputy Mendez took possession of defendant's wallet and identification.

Around 3:30 a.m., and after the officers had left the Arechiga residence, defendant returned, looking for his wallet and cell phone.  Carlos came outside and spoke to defendant.  Defendant told Carlos he only wanted his wallet and did not have any problems with them.  After telling defendant to "hold on," Carlos went inside and called the police again.  When he came back outside, officers were already in the area.  Deputy Mendez was in his patrol vehicle in front of the Arechiga residence when he saw a black Saturn speed past him.  As he followed the car and called for additional units, defendant opened the passenger door and ran away, disregarding the deputy's order to stop.  A search team found defendant hiding under a tarp in the backyard of a Mira Loma home.

2. <u>Gang Expert Testimony</u>

Ontario Police Officer Brice Devey testified as an expert on Ontario-based criminal street gangs.  He had served as lead investigator in over 50 gang investigations and had participated in over 100.  On a daily basis, he spoke with other gang investigators concerning the crimes they were investigating and their contacts with gang members.  He had personally spoken with over 200 gang members, including members of the Black Angels.

At the time of the party in September 2008, "Southside Onterio" was the largest gang in Ontario with around 200 members, including over 40 "Black Angels."  There are three tiers within the gang.  The first tier, the Onterio Varrio Sur or "OVS," generally

5

consists of younger gang members who commit smaller crimes like theft and vandalism. Generally, when an OVS member "puts in work" by committing more serious crimes like stabbings, shootings, and selling drugs, he is promoted to the second tier, the Junior Black Angels. The third and highest tier, the Black Angels, is reserved for the most hard core gang members.

Officer Devey opined that defendant and Hernandez were active members of the Black Angels, and Ledesma was a member of the OVS. Ledesma had several gang-related notations on his MySpace page. Defendant and Hernandez had multiple gang-related tattoos; Hernandez had a "B" and an "A" tattooed on his head, and defendant had "OBA" tattooed on his neck. According to Officer Devey, a person cannot place an "OBA" tattoo on his body without serious repercussions from the gang unless they belong to the gang.

To remain in good standing with the gang, all Southside Onterio members must gain respect and demonstrate loyalty. When a member commits a crime, he gains respect because he has increased the gang's notoriety. The more violent the crime, the greater the increase in respect. Committing crimes also demonstrates loyalty because it shows members are "willing to give whatever it takes" for the gang. Loyalty also requires that gang members help each other in fights. If a gang member starts a fight and another gang member does not help in the fight, it indicates a "huge level of disrespect and coward[ice]." Additional details of Officer Devey's testimony is discussed below.

6

B. *Defense Evidence*

Numerous witnesses, including defendant, testified for the defense. The defense claimed defendant did not fight with anyone at the party or stab Aldo; he was misidentified. A neighbor invited him to the party and he attended for the purpose of meeting women and socializing. He returned to the party to retrieve his wallet and cell phone, and jumped out of Ledesma's car and ran when pursued by police because he was on parole and feared police contact while on parole. He admitted becoming a Black Angel at age 24 or 25, but did not regard himself as a gang member following his release from prison earlier during September 2008. The defense also claimed the stabbings were not gang related because no gang signs or names were displayed at the party.

### III. DISCUSSION

Defendant challenges the sufficiency of the evidence supporting his active gang participation conviction and the gang enhancement on his assault conviction. We conclude the evidence is sufficient to support both.

A. *Standard of Review*

In considering a claim that insufficient evidence supports a criminal conviction or sentencing enhancement, our standard of review is limited. (*People v. Smith* (2005) 37 Cal.4th 733, 738; *People v. Augborne* (2002) 104 Cal.App.4th 362, 371.) We review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—reasonable and credible evidence having solid value—from which any rational trier of fact could have found the defendant guilty of the crime or the

enhancement true beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Ortiz* (1997) 57 Cal.App.4th 480, 484.) We may not set aside a conviction or enhancement based on insufficiency of the evidence unless it clearly appears "'that on no hypothesis whatever'" is there sufficient substantial evidence to support it. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) Nor may we affirm a conviction or enhancement "based on speculation, conjecture, guesswork, or supposition." (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 663 [Fourth Dist., Div. Two].)

B. *Substantial Evidence Supports the Primary Activities Element of the Active Gang Participation Conviction*

Active participation in a criminal street gang is a crime. (§ 186.22, subd. (a).) A "'criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal*,* having as one of its primary activities the commission of one or more of the [33] criminal acts enumerated in . . . subdivision (e) [of section 186.22], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).)

Thus, an active gang participation conviction requires proof that the primary activities of the gang consists of one or more criminal acts enumerated in section 186.22, subdivision (e). These criminal acts or crimes include assault with a deadly weapon, robbery, unlawful homicide or manslaughter, the sale of controlled substances, burglary,

8

felony fraudulent use of an access card or account information, and unlawful use of personal identifying information. (§ 186.22, subd. (e)(1)-(4), (11), (28), (29).)

Defendant claims the prosecution presented insufficient evidence that the primary activities of the Southside Onterio gang system, including the Black Angels, consisted of one or more criminal acts listed in section 186.22, subdivision (e). On this basis, he claims the evidence is insufficient to support his active gang participation conviction. As we explain, Officer Devey's testimony was sufficient to establish the primary activities element of the active gang participation conviction.

Sufficient proof of a criminal street gang's primary activities may be based on evidence that its members have "*consistently and repeatedly*" committed one of more criminal acts listed in section 186.22, subdivision (e). (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 324.) Past and present conduct by gang members is relevant in determining the group's primary activities, and expert testimony based on an adequate foundation may be sufficient to establish the group's primary activities. (*Id.* at pp. 323-324; *People v. Gardeley* (1996) 14 Cal.4th 605, 620.)

According to Officer Devey, the Black Angels are the "hardcore" members of the Southside Onterio gang system, "the ones who have been promoted . . . [and] have put in enough work for the gang," and defendant was a self-admitted member of the Black Angels. Putting in work is the way a gang member gains respect in the gang system, and this can include "anything from selling drugs . . . [to] stabbings to shootings," and a gang

member generates revenue for the gang by committing robberies, burglaries, selling narcotics, and committing identity and check fraud.

Officer Devey based his testimony on his conversations with other Southside Onterio gang members, his investigation of numerous crimes committed by members of the gang, and his discussions with other law enforcement officers. He also testified concerning several predicate offenses committed by members of the Southside Onterio gang during the two-year period preceding the September 28, 2008, stabbings. These included possession of a firearm by a felon, criminal threats, carjacking, receiving stolen property, and drug sales. (§ 186.22, subd. (e)(4), (21), (24), (31).)

Based on Officer Devey's testimony, the jury could have reasonably inferred that members of the Southside Onterio gang system, including members of the Black Angels, had consistently and repeatedly engaged in stabbings, shootings, robbery, burglary, identity theft, and other crimes listed in section 186.22, subdivision (e). The officer's testimony was thus sufficient to show that the primary activities of the Black Angels consisted of statutorily enumerated crimes.

Contrary to defendant's suggestion, it was unnecessary for Officer Devey to use the term "primary activities" in his testimony. The jury had ample reason to infer the officer was talking about the primary activities of Southside Onterio gang members, including the Black Angels, when he testified that members of the gang gained respect and raised revenue by committing crimes listed in section 186.22, subdivision (e), including robberies, stabbings, and shootings. It was not necessary for the officer to use

10

the term "primary activities" in order to effectively describe the gang's primary activities. (*People v. Margarejo* (2008) 162 Cal.App.4th 102, 107.)

Lastly, defendant claims *In re Alexander L.* (2007) 149 Cal.App.4th 605 requires reversal of his active gang participation conviction. There, the gang expert's testimony lacked sufficient foundation to show that gang members had consistently and repeatedly committed criminal activities listed in section 186.22, subdivision (e), and the expert's testimony was therefore insufficient to establish the primary activities element of a gang enhancement. The gang expert testified "he knew" members of the gang had been involved in certain crimes, but the court pointed out, "[n]o specifics were elicited as to the circumstances of these crimes, or where, when, or how [the expert] had obtained the information." (*Id.* at pp. 611-612.)

Not so here. Officer Devey's testimony concerning the primary activities of the Southside Onterio gang was based on his personal conversations with its members, his investigation of over 100 crimes committed by its members, and his discussions with other law enforcement officers. Unlike the expert testimony in *In re Alexander L.*, Officer Devey's testimony was based on an adequate foundation and substantial evidence. (Cf. *In re Alexander L., supra,* 149 Cal.App.4th at pp. 611-614.)

C. *Substantial Evidence Supports the Gang Enhancement on the Assault Conviction*

Section 186.22, subdivision (b)(1) provides that "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal

11

conduct by gang members" is subject to enhanced penalties. (§ 186.22, subd. (b)(1).) The jury found defendant guilty of assaulting Aldo with a deadly weapon (§ 245, subd. (a)(1)), and further found that defendant committed the assault for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

Defendant claims there is insufficient evidence he committed the assault "for the benefit of" or "in association with" the Black Angles criminal street gang, and the enhancement must therefore be reversed. (§ 186.22, subd. (b)(1).) We disagree. Officer Devey's testimony supports a reasonable inference defendant stabbed Aldo for the benefit of and in association with the Black Angels gang.

According to Officer Devey, defendant and Hernandez were self-admitted Black Angels, the top-tier of the Southside Onterio gang system. Ledesma, Hernandez's younger brother, was a member of OVS, the first-tier and predominately younger clique of the Southside Onterior gang system. In Officer Devey's opinion, defendant was acting in association with and for the benefit of the Black Angels when he stabbed Aldo at the party, because he was assisting Hernandez after Hernandez got into a fight. Substantial evidence supports the officer's opinion.

According to Officer Devey, loyalty and respect are "the two biggest things" a Southside Onterio gang member has to demonstrate in order to become a member of the gang in the first place and remain in good standing. It would show a "huge level of disrespect" if a member did not assist another member in a fight.

On September 28, 2008, defendant crashed the party at the Arechiga residence, along with two of his fellow gang members, Hernandez and Ledesma. After Hernandez fought with and stabbed Alcaraz, defendant fought with and stabbed Aldo. Defendant, Hernandez, and Ledesma then left the Arechiga residence together after they were forced out of the backyard, and Hernandez and Ledesma threw bottles and other objects at the house. All of this evidence supports a reasonable inference that defendant stabbed Aldo in association with and for the benefit of his gang.[2]

Similarly, in *People v. Albillar* (2010) 51 Cal.4th 47, substantial evidence showed three gang members committed a rape in concert and other sex offenses against a 15 year old in association with and for the benefit of their gang. (*Id.* at pp. 51, 59-64.) A gang expert testified that gang members are expected to support each other in committing crimes, and that assisting fellow gang members in committing crimes earns the member respect and status within the gang, enhances the reputation of the gang, and enables the gang to rely on intimidation. (*Id.* at pp. 60-61.) The same showings were made here.

Defendant attempts to distinguish *Albillar* on the ground that the stabbings of Aldo "involved a confrontation at a backyard party between the hosts, who were not affiliated with any gang, and a group of 10 to 15 individuals who had been uninvited." He

---

**2** Officer Devey also testified that if Southside Onterio gang members are hanging out together, it indicates they are active and in good standing with the gang. Several days before defendant was hanging out with his fellow gang members Hernandez and Ledesma at Carlos's house, defendant was sitting with two other Black Angels members in a parole orientation meeting.

13

maintains that, "[o]ther than the defendants, there was no evidence that anyone else in the uninvited group was associated with a gang, and no indication that they attended the party for any purpose other than to socialize." Not so. Officer Devey's testimony concerning the importance of showing respect and loyalty in the gang culture supports a reasonable inference that defendant fought with and stabbed Aldo in order to show his respect and loyalty to Hernandez, to enhance the reputation of the Black Angels, and to raise its status as an intimidating criminal street gang.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING                    

J.

We concur:

HOLLENHORST          
               Acting P. J.

CODRINGTON          
               J.