Filed 12/19/13  P. v. Perez CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B246177 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA072030) |
| v. | |
| MANUEL JESUS PEREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael K. Kellogg, Judge.  Affirmed.

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Keith H. Borjon and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

A jury found true an allegation that appellant Manuel Jesus Perez committed two firearm offenses for the benefit of a criminal street gang, within the meaning of Penal Code section 186.22, subdivision (b)(1).[1] Appellant contends there was insufficient evidence to support the jury's finding on the gang enhancement. We affirm.

# PROCEDURAL HISTORY

A jury convicted appellant of possession of a firearm by a felon (§ 29800, subd. (a)(1)), and carrying a loaded handgun (§ 25850, subd. (a)). The jury further found true that the offenses were committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) In a bifurcated proceeding, appellant admitted having served a prior prison term. (§ 667.5, subd. (b).) The trial court sentenced appellant to the low term of 16 months in prison on count 1, imposed but stayed the same term as to count 2, struck the section 667.5 enhancement, and imposed and later struck the punishment on the gang enhancement. Appellant timely appealed.

# FACTUAL BACKGROUND

On September 15, 2012, at about 2 p.m., Los Angeles Police Officer Daniel Frazer and his partner, Officer James Fillmore, were patrolling in a marked police vehicle when they noticed a car double-parked and blocking the intersection of DeGarmo and Lauren streets in Los Angeles. After observing the driver and passenger get out of the car and switch positions, the officers decided to conduct a

---

[1] All further statutory citations are to the Penal Code.

2

traffic stop. As the officers approached the car on foot, the driver -- later identified as appellant -- drove away. The officers returned to their patrol vehicle and pursued. Shortly thereafter, appellant jumped out of the moving car, and the driverless car continued until it collided with two parked cars.

The officers exited their vehicle and gave chase. Officer Fillmore noticed appellant had a gun and yelled, "Gun." Officer Frazer saw that appellant held a gun in his right hand. Appellant attempted to jump over a wall, but failed. As appellant dropped back down to the ground, he tossed the gun into the air. The officers arrested appellant. Appellant was wearing a T-shirt and baggie shorts. The officers recovered the gun, a Remington 1911 handgun, loaded with four live rounds. The gun was not registered to appellant.

Officer Fillmore spoke with appellant at the police station. Appellant admitted he was a Vineland Boys gang member and said he had been one "as long as he could remember." Appellant had numerous tattoos on his face and body identifying him as a member of the Vineland Boys. These included tattoos on both legs, a large "VBS" tattoo on his chest, the word "gang" on his shoulder, and "Vineland Boys" on his back. On his lip was a tattoo reading "Vineland."

Detective Gabriel Bucknell interviewed appellant while he was in custody. Appellant told Detective Bucknell that the "cops got him with a gun." When asked why he had the gun, appellant said that he had it for protection. Appellant said he got it from another Vineland Boys gang member, but would not say who.

Appellant told Detective Bucknell that he had an appointment to remove one of his tattoos. Detective Bucknell opined that there could be two reasons for removing a gang tattoo -- either the person is trying to get out of the gang or he is trying to become a little less obvious. When asked about appellant's purported tattoo removal appointment in the context of appellant getting a gun from another

3

gang member, Detective Bucknell opined that appellant was trying to become less obvious. The detective also opined that the reason appellant was carrying a gun and getting a gun from another gang member was because he was involved in illegal activity.

Officer Jonathan Lozon testified as a gang expert. In January 2011, he was assigned to monitor the Vineland Boys gang. His job was to "monitor and track gangs and gang members, investigate gang-related crimes, . . . interview gang members, both as victims, suspects, and witnesses as well as their families, their friends, and their neighbors." He stated that he has had contact with over 300 gang members during his years as a police officer.

Officer Lozon testified that the Vineland Boys gang has a common hand sign. Gang members also often wore similar clothing: sports memorabilia with the letter "S," which represented the gang's territory in Sun Valley. The area where the car was detained and appellant was arrested fell within Vineland Boys territory.

Officer Lozon opined that the primary activity of Vineland Boys is violence. Elaborating, he stated that the gang is known for "their murders, attempted murders, their robberies, assault with deadly weapons as well as car thefts, narcotics sales." As evidence of predicate acts, Officer Lozon identified the arrests and convictions of two Vineland Boys gang members: one for assault with a deadly weapon in June 2011, and one for criminal threats in May 2011.

According to Officer Lozon, gangs operate through fear -- "fear from other rival gang members, the community. If the community is not afraid of them, they can't operate their criminal enterprise and their turf." Officer Lozon opined that this fear is prevalent in Vineland Boys territory. The Vineland Boys gang is particularly notorious because it has been responsible for murdering a few police

4

officers. Officer Lozon also opined that a gang tattoo "allows you to express or tell everyone who you are without saying anything." "So all that fear and intimidation that goes along with that gang's name, now that gang member is going to be able to carry that and feed off that and either victimize people or just use it as fear and intimidation toward people."

After being presented with a hypothetical that mirrored the facts in this case, Officer Lozon opined that the gang member possessed the firearm for the benefit of a criminal street gang. When asked what his opinion was based on, Officer Lozon explained: "First, that -- criminal street gangs or criminal enterprises, which is a street gang, the building blocks are weapons, commonly firearms. Without those, they are powerless. That firearm can be used to assault, murder rival gang members. It can be used to protect themselves, the reputation, the gang's reputation within their turf from rival gang members. It can be used in commissions of other crimes, whether in their turf or out of the turf, such as robberies, shootings, murders. [¶] And lastly, that gang member that is in [his] own turf displaying that gang's tattoos, running from the police, throwing a gun, and subsequently getting arrested, in fear or -- introduces a lot of fear within the community. [¶] If you see somebody that's got tattoos representing such a violent gang with a violent history, displaying tattoos, throwing a gun, the community is going to be frightened. If they maintain that fear and intimidation in that community, like we discussed earlier, it allows them to freely operate within their turf with a commission of their crime."

Officer Lozon opined that recent shooting attacks against Vineland Boys in their own gang territory -- including a shooting in which appellant was a victim -- made the gang look weak. When asked whether the fact that the gang member in the prior hypothetical had been the victim of multiple shootings in the past months

5

would make a difference in Officer Lozon's opinion as to whether or not the gun was possessed for the benefit of a criminal street gang, Officer Lozon replied: "Absolutely. If there is that much activity recently, one could expect to be encountered by a rival gang member that is armed. And being a gang member, it is your job, it is your responsibility to defend yourself, your own reputation, within the gang, but most importantly that gang's reputation on your own turf. You don't really have much choice."

Officer Lozon opined that a person with five gang tattoos, armed with a handgun, and in gang territory (even though he lived 50 miles away) would "[a]bsolutely" be an active member of the gang, since that person would have no other reason to be in that area. The fact that the gun was given to the gang member by a fellow gang member would only add to Officer Lozon's opinion, as he had never heard of a situation where a gang member had given a gun to someone who was not the member of the same gang.

When shown photographs of appellant on the date of his arrest, Officer Lozon stated that he had never seen anyone attempting to drop out of a gang who openly displayed tattoos symbolizing the gang in the gang's territory.

## DISCUSSION

Appellant concedes there was sufficient evidence to sustain his convictions for possession of a firearm by a felon and carrying a loaded firearm. He contends, however, that the evidence was insufficient to support the jury's finding that he committed those firearm offenses for the benefit of a criminal street gang. According to appellant, the prosecution failed to prove that the primary activities of the Vineland Boys gang consisted of the crimes listed in the applicable statute (§ 186.22, subd. (e)(1)-(e)(25) & (e)(31)-(e)(33)), and that appellant had the

6

specific intent to commit the offenses to benefit, further or promote the criminal conduct of the gang.

"In determining whether the evidence is sufficient to support a conviction or an enhancement, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] This standard applies to a claim of insufficiency of the evidence to support a gang enhancement. [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, italics omitted.) "The elements of the gang enhancement may be proven by expert testimony." (*People v. Martinez* (2008) 158 Cal. App. 4th 1324, 1332.)


A.     Evidence of the Gang's "Primary Activity"

Officer Lozon testified that he is assigned to monitor the Vineland Boys gang, and that his job includes investigating gang-related crimes and interviewing gang members, their families, friends, and neighbors. He opined that the primary activity of the Vineland Boys gang was "violence," which included "murders, attempted murders, . . . robberies, assault with deadly weapons[,] car thefts, [and] narcotics sales." Although violence is not an activity enumerated in section 186.22, subdivision (e), the other crimes are so listed. (See § 186.22, subd. (e)(1)

7

[assault with a deadly weapon], (e)(2) [robbery], (e)(3) [murder], (e)(4) [narcotics sale], (e)(21) [carjacking].) In addition, Officer Lozon testified about two specific crimes committed by Vineland Boys gang members -- assault with a deadly weapon and criminal threats -- that are listed in section 186.22, subdivision (e). (See § 186.22, subd. (e)(1) [assault with a deadly weapon], (e)(24) [criminal threats].) On this record, there was substantial evidence to support the jury's finding that the Vineland Boys gang's primary activities consisted of crimes listed in section 186.22, subdivision (e)(1) through (e)(25) and (e)(31) through (e)(33). (See *People v. Duran* (2002) 97 Cal.App.4th 1448, 1464-1466 [although gang expert testified that the gang's primary activity was "'putting fear into the community,'" an activity not listed under section 186.22, subdivision (e), the expert's further testimony that the gang members committed robberies, assault with deadly weapons, and narcotics sales was sufficient to support the jury's finding on the gang's primary activities].)

Appellant's reliance on *In re Alexander L.* (2007) 149 Cal.App.4th 605 is misplaced because there, the expert did not "directly" testify that the primary activities of the gang consisted of the crimes enumerated in section 186.22, subdivision (e), and the expert did not establish an adequate foundation for his testimony. (*Id.* at pp. 611-612.) In contrast, here, Officer Lozon directly testified that the primary activities of the Vineland Boys gang were to commit violent crimes, including murders, assaults with deadly weapons, car thefts and narcotics sales. Officer Lozon also established an adequate foundation for his expert testimony, as he testified that he had regularly monitored the Vineland Boys gang, investigated gang-related crimes, and interviewed Vineland Boys gang members and their associates since January 2011.

8

B.     Evidence that Crimes were Committed to Benefit, Further, and Promote Criminal Conduct of the Gang

Officer Lozon testified that gangs operate through fear.  It is fear among rival gang members and instilling fear in the community that allows the gang to operate its criminal enterprise and protect its territory.  He further opined that guns were the "building blocks."  "Without those, they are powerless.  That firearm can be used to assault, murder rival gang members.  It can be used to protect themselves, the reputation, the gang's reputation within their turf from rival gang members.  It can be used in commissions of other crimes, whether in their turf or out of the turf, such as robberies, shootings, murders."

Officer Lozon also testified that being a victim of a shooting attack from other gangs would weaken the gang, because it made the gang look weak.  In response to recent shootings, he said, "being a gang member, it is your job, it is your responsibility to defend yourself, your own reputation, within the gang, but most importantly that gang's reputation on your own turf."

Appellant, an admitted Vineland Boys gang member, was in the gang's territory, although his residence was 50 miles away.  He had numerous Vineland Boys gang-related tattoos, including three visible tattoos on his face and his legs.  Thus, appellant was openly displaying his gang affiliation.

Appellant also was in possession of a loaded handgun that had been given to him by another Vineland Boys gang member, suggesting that the handgun was a "gang gun."  (See *People v. Margarejo* (2008) 162 Cal.App.4th 102, 111 [jury could rely on gang member's transfer of a gun to a fellow gang member to conclude the gun was a gang gun].)  As Officer Lozon opined:  "If you see somebody that's got tattoos representing such a violent gang with a violent history, displaying tattoos, throwing a gun, the community is going to be frightened.  If

9

they maintain that fear and intimidation in that community, like we discussed earlier, it allows them to freely operate within their turf with a commission of their crime." In addition, appellant had been the victim of a recent shooting in the gang's territory. Thus, it was appellant's responsibility as a gang member to be armed to defend himself, his reputation, and his gang's reputation. On this record, the jury could infer that appellant possessed a loaded handgun to benefit and promote the Vineland Boys gang, because being armed allowed him to maintain fear of the gang in the community and to defend the gang's reputation in light of the recent shootings. Maintaining fear and intimidation in the community would allow the gang to continue its criminal activity.

Appellant's reliance on *In re Frank S.* (2006) 141 Cal.App.4th 1192 is misplaced. There, the gang expert "simply informed the judge of her belief of the minor's intent with possession of [a] knife." (*Id*. at p. 1199.) The expert stated that the possession of the knife benefitted the gang since "'it helps provide them protection should they be assaulted by rival gang members.'" (*Ibid*.) However, there was no evidence that "the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense." (*Ibid*.) In addition, no evidence was presented about how the minor had acquired the knife. In contrast, here, appellant was in Vineland Boys territory, he had received the handgun from another gang member, and he had reason to expect to use the loaded weapon to defend the gang's reputation, as he had been the victim of a recent shooting in the gang's territory. In short, substantial evidence supported the gang enhancement.

10

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

11