Filed 1/7/14  P. v. Garibay CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICTOR MANUEL GARIBAY,<br><br>    Defendant and Appellant. | B244630<br><br>(Los Angeles County<br>Super. Ct. No. TA119156) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

Landra E. Rosenthal, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Victor Manuel Garibay appeals from a judgment following jury convictions of first degree murder, attempted murder, shooting at an occupied motor vehicle, and possession of a firearm by a felon, with true findings on firearm and gang allegations. He contends the trial court erred in failing to instruct the jury on the heat of passion theory of voluntary manslaughter. Appellant also claims the court inadequately instructed on second degree murder. Finally, he challenges the sufficiency of the evidence to support the gang allegation. Finding no basis for reversal, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On the evening of November 14, 2010, Luis Castellon Beltran (Castellon) was driving from his brother's house when he saw appellant waving at him.[1] Mr. Castellon pulled over and agreed to give appellant a ride around the corner. They knew each other from their membership in the Hacienda Village Boys gang. After stopping briefly at a house, appellant told Mr. Castellon to return to where they had started, near Tim's Liquor Store. As they approached the store, appellant jumped into the backseat of the car. Mr. Castellon knew something was wrong, but did not see that appellant had a gun. He continued driving toward the store and saw Jorge Altamirano standing outside.

Mario Mendez had driven Mr. Altamirano to Tim's Liquor Store to use a payphone. Appellant and Mr. Castellon arrived while Mr. Altamirano was walking toward Mr. Mendez's car after making a call. Mr. Altamirano heard somebody in the backseat of Mr. Castellon's car ask the familiar gang challenge, "Where you from?"[2] Mr. Altamirano responded, "I'm from nowhere." When the person in the backseat pointed a gun at Mr. Altamirano, he threw himself into Mr. Mendez's car and told him to drive.

---

[1] Mr. Castellon testified at the time of the trial that he was in custody and serving a sentence for grand theft. He stated that he had not been promised anything in exchange for his testimony.

[2] At trial, a gang expert testified that "where are you from" means "what gang are you from."

2

Then Mr. Castellon heard appellant shout, "Village Boys," and immediately thereafter, he heard multiple gunshots. Mr. Mendez slumped over the steering wheel. He later died from multiple gunshot wounds to the head. As they fled the scene, appellant told Mr. Castellon that Mr. Mendez and Mr. Altamirano "were trying to get me" and had flipped him off earlier.

During a July 13, 2011 interview with a homicide investigator, Mr. Altamirano was unable to make a positive identification of the shooter. On March 15, April 7, and July 19, 2011, the same investigator interviewed appellant, who recounted multiple versions of how Mr. Mendez died, none of which involved appellant. However, appellant eventually told the investigator that Mr. Altamirano's car had passed by him multiple times that evening, with a passenger pointing a gun at him while saying "38." After the passenger threatened to kill him and his family, appellant said he blacked out and tried to scare them off. He admitted to being the gunman. Because he had witnessed the murder of Daniel Rodriguez outside Tim's Liquor Store in July of 2009, appellant said he thought the passenger would kill him. During the subsequent trial for that crime, in which two members of the 38th Street gang were convicted, appellant had been an uncooperative witness. Mr. Rodriguez was a member of the Hacienda Village Boys gang, which was known to have an active conflict with the 38th Street gang.

Appellant was charged with the murder of Mr. Mendez (Pen. Code, § 187, subd. (a); count 1),[3] the attempted murder of Mr. Altamirano (§§ 664, 187, subd. (a); count 2), shooting at an occupied motor vehicle (§ 246; count 3), and possession of a firearm by a felon (§ 12021, subd. (a)(1); count 4) with enhancements for using a firearm (§ 12022.5) and committing the crime to benefit a criminal street gang (§ 186.22, subd. (b)(1)(C)). He entered a plea of not guilty, denied all allegations, and presented no affirmative defense. A gang expert testified that the Hacienda Village Boys is a criminal street gang whose territory includes the area around Tim's Liquor Store. He also testified that appellant and Mr. Castellon were members of the gang. He described how "hitting

---

[3]     All statutory references are to the Penal Code.

3

up" the victims and yelling out "Village Boys" showed that the homicide was committed for the benefit of the gang. The expert also verified that appellant had multiple gang tattoos.

The trial court denied appellant's request for a jury instruction on voluntary manslaughter on a heat of passion theory, finding no substantial evidence to support it. The jury convicted appellant on all counts, and found the gang and firearm allegations to be true. The court imposed an aggregate sentence of 90 years to life in prison. Appellant filed a timely notice of appeal.

## DISCUSSION

### I

Appellant claims the court's refusal to instruct the jury on the heat of passion theory of voluntary manslaughter pursuant to CALCRIM No. 570 violated his right to a fair trial under the United States and California constitutions. He argues the instruction was supported by substantial evidence.

"'A criminal defendant has a constitutional right to have his or her jury determine "every material issue presented by the evidence" and this includes the right, where appropriate, to have the jury instructed on lesser included offenses.' [Citation.]" (*People v. Friend* (2009) 47 Cal.4th 1, 51.) "In a murder case, trial courts are obligated to instruct the jury on defenses supported by substantial evidence that could lead to conviction of the lesser included offense of voluntary manslaughter, even where the defendant objects, or is not, as a matter of trial strategy, relying on such a defense." (*People v. Moye* (2009) 47 Cal.4th 537, 541 citing *People v. Breverman* (1998) 19 Cal.4th 142, 162-163 (*Breverman*).) This obligation to instruct is not without limits. "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury."

(*Breverman*, at p. 162.) We review de novo an alleged failure of the trial court to instruct on a lesser included offense. (*People v. Souza* (2012) 54 Cal.4th 90, 113.)

Voluntary manslaughter includes the "unlawful killing of a human being without malice . . . . [¶] . . . upon a sudden quarrel or heat of passion." (§ 192.) "An intentional, unlawful homicide is 'upon a sudden quarrel or heat of passion' . . . and is thus voluntary manslaughter . . . if the killer's reason was actually obscured as the result of a strong passion aroused by a 'provocation' sufficient to cause an '"ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than from judgment."' [Citations.] '"[N]o specific type of provocation [is] required . . . ."' [Citation.] Moreover, the passion aroused need not be anger or rage, but can be any '"'[v]iolent, intense, high-wrought or enthusiastic emotion'"' [citation] other than revenge [citation]. 'However, if sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter . . . .' [Citation.]" (*Breverman*, *supra*, 19 Cal.4th at p. 163.)

Here, evidence was insufficient for the jury to reasonably conclude that appellant acted under a heat of passion. Substantial evidence must consist of '"""evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." [Citation.]"' (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008.) The record provides no substantial evidence of any provocation by the victim. Appellant presented no evidence during trial, relying only on his personal account of the murder during an interview with a police investigator. Without further supporting evidence, the alleged conduct of Mr. Mendez and Mr. Altamirano is not provocation. Appellant's fear of being shot because of his involvement in the Rodriguez trial supported a theory of imperfect self defense, but it was not provocation.[4] As the trial court determined, "in this case there's no evidence that supports a heat of passion argument. There's no confrontation. There's no evidence, no matter what side or what you believe with regards

---

[4] The court instructed the jury on voluntary manslaughter based on the theory of imperfect self defense.

5

to the testimony. There's nothing that will support a heat of passion argument." Because the evidence on this theory was insufficient to deserve consideration by the jury, the court was not obligated to instruct pursuant to CALCRIM No. 570.

II

Appellant argues the trial court erred by omitting the final paragraph of the instruction on first degree murder, CALCRIM No. 521, which also defines second degree murder. He contends the omission removed from jury consideration a basis for a verdict on a less serious offense. Appellant also claims the court should have instructed pursuant to CALCRIM No. 522, which states in relevant part, "[p]rovocation may reduce a murder from first degree to second degree."

"'[T]he trial court ha[s] a duty to instruct on 'all theories of a lesser included offense which find substantial support in the evidence.' [Citation.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 866-867 (*Rogers*) [finding court's error harmless in case of incomplete instruction on second degree murder].) "In reviewing a claim that the court's instructions were incorrect or misleading, we inquire whether there is a reasonable likelihood the jury understood the instructions as asserted by the defendant. [Citation.] We consider the instructions as a whole and assume the jurors are intelligent persons capable of understanding and correlating all the instructions. [Citation.]" (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1332.)

"The erroneous failure to instruct on a lesser included offense generally is subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, at pages 836–837. . . . Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of. [Citations.]"[5]

---

[5]     Neither of the recognized exceptions to this harmless error rule applies here. (See *Rogers*, *supra*, 39 Cal.4th at p. 868, fn. 16 ["There is an exception to this rule when the failure to instruct on a lesser included offense rises to the level of a federal constitutional violation because it renders the capital verdict unreliable under the Eighth Amendment.

(*Rogers*, *supra*, 39 Cal.4th at pp. 867-868, fn. omitted.) "'Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' [Citation.]" (*People v. Thomas* (2012) 53 Cal.4th 771, 814.)

Here, the trial court should have provided the final paragraph of CALCRIM No. 521. The court instructed on the elements of first degree murder and stated: "If you find the defendant guilty of murder under Count 1, you must then decide whether it was murder of the first or second degree." However, the court omitted the final paragraph of the instruction, which provides: "The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder." (CALCRIM No. 521.) The Bench Notes for the instruction state, "[t]he court **must give** the final paragraph in every case." (Note to CALCRIM No. 521.)

Assuming it was error to omit this paragraph, we conclude that any error was harmless. We do so for two reasons. First, the court instructed on causation and malice aforethought pursuant to CALCRIM No. 520 and twice read the instruction that, "If you decide that the defendant has committed murder, you must decide whether it is murder of the first or second degree." Then the court defined the willfulness, deliberateness, and premeditation requirements for first degree murder, but omitted the final paragraph of CALCRIM No. 521. Based on the instructions given and having concluded that the crime was murder, the jury would have to conclude that it was second degree murder

[Citation.] There also may be an exception when the error deprives the defendant of the federal due process right to present a complete defense. [Citation.]".)

unless it found the killing was willful, deliberate, and premeditated. Second, it is not reasonably probable that the jury would have convicted appellant of second degree murder had it been provided with a complete instruction. Appellant's own statements during an interview with a police investigator are the only evidence supporting a second degree murder conviction. Where "evidence suggesting defendant did not premeditate and deliberate came largely from defendant and his experts . . . ," it does not outweigh evidence supporting a first degree murder conviction. (*Rogers*, *supra*, 39 Cal.4th at p. 871.) Mr. Castellon testified that appellant moved into the backseat of his car, had a loaded gun ready, and only fired shots after a conversation with Mr. Altamirano. The jury found the evidence supported a conviction of first degree murder, and it is hardly likely that it would have reached a different result under a more detailed second degree murder instruction.

Finally, the court did not err in failing to instruct sua sponte on provocation pursuant to CALCRIM No. 522. That instruction states:

> "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide.
>
> "If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.]
> "[Provocation does not apply to a prosecution under a theory of felony murder.]"

As the parties agree, CALCRIM No. 522 "is a 'pinpoint instruction' . . . and therefore need not be given on the court's own motion." (*Rogers*, *supra*, 39 Cal.4th at pp. 878-879.) Also, the Bench Notes for the instruction provide, "There is . . . no sua sponte duty to instruct the jury on this issue. . . . This is a pinpoint instruction, to be given on request." (Note to CALCRIM No. 522.) Because appellant's counsel did not request the instruction, the court did not err in failing to include it.

8

Appellant claims there was insufficient evidence for the jury to find the gang allegation under section 186.22, subdivision (b)(1) to be true. Specifically, he argues the evidence was insufficient to support the finding that he acted with the specific intent to promote, further, or assist the criminal conduct of gang members.

Section 186.22, subdivision (b)(1) imposes additional punishment for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) "In determining whether the evidence is sufficient to support a conviction or an enhancement, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] . . . [T]he reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224, italics omitted [finding sufficient evidence to support true finding of gang enhancement].) "'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement." (*People v. Vang* (2011) 52 Cal.4th 1038, 1048 [expert testimony proper in response to hypothetical questions regarding whether conduct benefitted gang].)

Substantial evidence supports the jury's true finding of the gang allegation. First, there was ample evidence that appellant committed the crime in association with a gang. Mr. Castellon admitted he and appellant were members of the Hacienda Village Boys, which the expert witness confirmed. (See *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 (*Morales*) [jury could reasonably infer requisite association from fact that

9

defendant committed crimes in partnership with fellow gang members].)  Also, appellant had multiple gang tattoos, and field identification cards indicated that both he and Mr. Castellon were gang members.  In support of the finding that appellant's crime benefitted the gang, the expert testified that murder was a primary activity of the gang.  He also testified that, as a result, the murder of Mr. Mendez benefitted the gang.  In addition, the murder occurred within Hacienda Village Boys gang territory and followed a familiar gang challenge.

Finally, substantial evidence supports the finding that appellant committed the crime with the required specific intent.  Evidence demonstrated that he intended to commit the murder in known gang territory and in association with Mr. Castellon, a member of his gang.  (See *Morales*, *supra*, 112 Cal.App.4th at p. 1198 [finding substantial evidence supported requisite intent where defendant intended to commit crimes in association with known members of his own gang]; *People v. Romero* (2006) 140 Cal.App.4th 15, 17 [evidence that defendant intended to commit crime with known gang member created reasonable inference that defendant possessed requisite intent under section 186.22, subdivision (b)(1)]; *People v. Leon* (2008) 161 Cal.App.4th 149, 163 [finding requisite intent where defendant intended to commit offense in association with known gang member and in rival gang's territory].)  Appellant flagged down Mr. Castellon from the sidewalk, solicited his assistance in driving around the neighborhood, and shouted "Village Boys" just before shooting Mr. Mendez.  (See *People v. Margarejo* (2008) 162 Cal.App.4th 102, 109 [flashing of gang signs during police chase suggests intent to further purposes of gang].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.

11