Filed 12/8/20  In re J.S. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>J.S.,<br><br>     Defendant and Appellant. | F080249<br><br>(Super. Ct. No. 18JQ0085A)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Jennifer Lee Giuliani, Judge.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Franson, Acting P.J., Peña, J. and Snauffer, J.

## INTRODUCTION

On October 17, 2018, J.S., a minor, and another male pursued and assaulted a young man on his way home from a bus stop. After the incident, the victim reported to police that J.S. repeated the words "Home Garden Crip" before challenging him to fight. Two days later, on October 19, 2018, another young man claimed J.S. threatened to shoot him if he did not pay back money he owed to J.S.

The juvenile court sustained the petitions against J.S. alleging he committed assault by means likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4) with a gang enhancement (*id.,* § 186.22, subd. (b)(1)(A)) on October 17, 2018, and made a terrorist threat (*id.*, § 422) on October 19, 2018. On appeal, J.S. challenges the sufficiency of the evidence in support of the gang enhancement to the assault charge and his terrorist threat adjudication arising from the October 19, 2018, incident.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Two separate juvenile wardship petitions were filed against J.S.; the first petition alleged assault by means likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4) with a gang enhancement (*id.*, § 186.22, subd. (b)(1)(A)) on October 17, 2018, and the second alleged a terrorist threat in violation of section 422 with a gang enhancement (*id.*, § 186.22, subd. (b)(1)(A)) on October 19, 2018. The juvenile court held a combined jurisdiction hearing on the petitions.

Before the hearing, the court accepted a stipulation by the parties that the Hanford Gangster Crips, also known as Home Garden Crips or HGC, are a criminal street gang pursuant to Penal Code section 186.22. The People also designated Investigator Kevin Kurtz as a gang expert.

*October 17, 2018, incident*

Jorge M. was walking home from the bus stop in the afternoon of October 17, 2018, when J.S. walked towards him. Jorge crossed the street towards his apartment, and J.S. crossed the street towards Jorge. J.S. was about 12 to 13 feet away from Jorge and "said he wanted to fight." Jorge said "no" and started running. J.S. and another person chased Jorge and tried to stop him. They caught up with Jorge and started hitting him. Jorge fell to the ground, and J.S. and the other person continued to hit and kick Jorge in the head while he was on the ground. Jorge managed to get up and stop a woman in a vehicle. The woman tried to help Jorge while J.S. stood there. Jorge and the woman both identified J.S. at trial. The woman recalled J.S. saying, "He was asking for it." After the incident, Jorge's elbow was scraped and bleeding, he had a bump on his head, and his clothes were ripped from the sleeves.

At the hearing, Jorge testified he was scared because it will "probably … happen again" because he was testifying. Jorge recalled speaking to two officers after the incident and providing a truthful statement. He remembered telling the officers J.S. kept repeating the words "Home Garden Crip" and "Crip" during the incident. He recalled J.S. saying this more than once, including when he crossed the street and said he wanted to fight.

Officer Anthony Chandler testified he was dispatched to an apartment complex on October 17, 2018, where he contacted Jorge. Chandler noticed Jorge had cuts, blood, and bruising on his right elbow and Jorge's clothes were torn and dirty. Jorge reported two male juveniles attacked him, one of whom he knew as J.S. Officer Chandler later contacted J.S. with his brother and mother. J.S. stated that Jorge "wanted to fight, so they beat him up."

*October 19, 2018, incident*

At the hearing, S.G. testified he was at his house at around 8:00 p.m. on October 19, 2018; he denied anything occurred that evening. He recalled an officer coming to speak to him, but he did not remember why. He denied he was afraid to be in

3.

court or that he felt threatened. He testified he and J.S. had been friends for a year and a half; they were friends on October 19, 2018. S.G. denied seeing J.S. on October 19, 2018, or telling an officer he had seen him. Specifically, S.G. denied that J.S. was outside his apartment complex at around 5:00 p.m. that day, that J.S. approached S.G., or that J.S. mentioned he was a Home Garden Crip.

During the hearing, S.G.'s mother testified she recalled Officer Jonathan Farr coming to her home regarding "an incident that happened with another student" and her son. But she denied the other student was in the courtroom and stated she did not recall if it was J.S. She, too, denied being scared or fearful of being in court. She stated she did not recall J.S. ever threatening her son or receiving messages from J.S. regarding threats to S.G.

Officer Farr testified he was dispatched for a "threat report" on October 19, 2018, and he contacted the victim, S.G. S.G. provided a statement and appeared fearful; he told Officer Farr he was afraid and upset. S.G. reported that, earlier that day, J.S. "threatened to shoot him on Home Garden Crip" because S.G. owed him money. S.G. stated he was afraid of J.S. because J.S. was "known to be violent and known to be a gang member." According to Officer Farr, S.G. stated he was in "sustained fear." Officer Farr also spoke to S.G.'s mother who advised him J.S. had threatened her son. S.G.'s mother gave Officer Farr S.G.'s cell phone on which there were messages from J.S. threatening S.G.

The prosecutor introduced photographs of the text messages at trial. In one of the messages, in response to a message from S.G.'s mother, J.S. texted, "Since u not tryna pay me back yo son getting beat up." S.G.'s mother responded, "Will [sic] see about that." J.S. replied, "Okay u testing think I'm paying [sic]," "U tryna get me locked up again [sad face emoji, sad face emoji] I'm just trying to get my money u own [sic] me[.]" The prosecution also admitted other photographs from the phone in which J.S. can be seen making hand signs. Officer Farr explained, the first photograph of J.S. had the caption "X3" written on it and J.S. is pictured holding up three fingers. In the other

4.

photograph, J.S. is also holding up three fingers and has a "blunt" (marijuana-filled cigar) in his mouth.

Officer Farr spoke with J.S. that day at J.S.'s residence, and J.S. confirmed he wrote the text messages to S.G. and S.G.'s mother, including the text message discussing "beating [S.G.'s] ass." J.S. reported to Officer Farr that S.G. owed him money. Officer Farr had J.S.'s phone and was in charge of transporting him. Officer Farr asked J.S. if he wanted him to retrieve a phone number for him so that he had it when he was "booked," and J.S. said "yes." J.S. provided Officer Farr his password to unlock his phone and "[i]t was a pattern of a 'C.'"

### Investigator Kurtz testifies as a gang expert

Investigator Kevin Kurtz testified he had formal gang training and worked with a number of gang investigators. He personally contacted over 30 members of the Hanford Gangster Crips (HGC), so he was "familiar with the way they do their business and how they operate." He stated he participated in an HGC "debriefing," which is an interview with someone who no longer wants to be in a gang, usually in a custodial setting. During the debriefing, Kurtz obtained information about the structure of HGC, common signs, colors, who is in charge, common territory frequented, and information on narcotics dealers. Kurtz also authored three search warrants for HGC and was present when the warrants were executed. The court designated Kurtz as an expert on the Home Garden Crips or the Hanford Gangster Crips (used interchangeably), also known as HGC.

Based on S.G.'s testimony, Investigator Kurtz believed S.G. was intimidated standing in front of J.S. and it dissuaded him from testifying truthfully, which was very common with gangs; people do not want to testify in fear of retaliation. Kurtz explained "gangs thrive on fear and retaliation." He believed the same was true with regard to S.G.'s mother claiming not to recall almost anything that happened on the date of the incident.

Kurtz also thought it was significant J.S. mentioned HGC during the October 17, 2018, incident with Jorge. Kurtz explained, "Crips are really prideful. They want you to know they are a Crip and, so, it's significant when he … mentioned he's Home Garden Crip he's saying he's a Crip, he's doing it for the Crips and that's also boosting the [minor]'s status and showing that he's willing to put in work and he's willing to beat people up for his gang."

The prosecutor showed Kurtz the two photographs of J.S. retrieved from S.G.'s phone. Kurtz opined it was significant that the first photograph had the X3 caption on it because Crips commonly reference the number 3 because the third letter of the alphabet is "C" for Crip. Kurtz further opined the hand sign J.S. was making in the second photograph was a "backwards I love you sign in sign language" with three fingers for the number 3 and also depicting an "H" for "HGC." Kurtz also found significant J.S.'s use of the number 3 in the place of the letter "e" in his text messages which, Kurtz opined, is an effort "to throw in … Crip pride." He also opined J.S.'s use of three blue dots at the end of a text message was significant because Crips associate with the color blue and three represents the letter "C."

Kurtz opined J.S. is a member of HGC based on J.S.'s statements, the victims' testimonies, the pictures on J.S.'s Instagram page, the fact J.S. posted a picture of himself holding up "the Crip sign with his hands" on social media "to let people know he's a member of the Hanford Gangster Crips," the way J.S. typed his text messages, and the "C" pattern J.S. used to unlock his phone which, Kurtz opined, was "extremely common with gang members."

The prosecutor then posed Kurtz with hypotheticals mirroring the facts of the two charged incidents. Kurtz opined that if a Home Garden Crip is walking across the street from an individual, says he wants to fight, then identifies himself as a Home Garden Crip before pursuing and attacking the individual with another person, that crime benefits HGC because "they thrive off fear and intimidation." Kurtz explained beating someone

6.

up is one of the biggest things you can do to arouse fear, especially when people are around, and it is also a way of gaining status in the gang. And "the more status you have in a gang the more power you have and the more people respect you."

Kurtz then opined it benefits the gang "if a Home Garden Crip confronts an individual and tells that individual on Home Garden Crip I'll get people to shoot you if you don't pay me back, that person is then fearful and ends up calling law enforcement, law enforcement observes that person to be fearful and observes that person to be in sustained fear, the person then continues to receive messages from an Instagram account, that Instagram account refers to jumping that person, … also sending pictures of themselves to that person." His opinion was based on the reference to the gang, HGC, and the use of fear and intimidation, which is "the basis of a gang." He opined that fear and intimidation benefit a gang because gangs demand respect and "if you fear somebody you are going to respect them. … It makes people not want to testify. It makes people want to not be witnesses. So that fear and intimidation goes a long way when it comes to gangs."

Kurtz explained telling an individual, "If you don't pay me you are going to get beat up" is a perfect example of how gangs thrive on fear and intimidation. It is telling the individual, "If you don't do this I'm going to get my gang and we're going to go shoot you," which "automatically heightens your fear." Kurtz also opined that money is a big part of gangs; it does not matter the amount, the gang is going to get their money one way or another.

***Adjudication and disposition***

The court concluded the People satisfied their burden of establishing J.S. committed an assault likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4) and that the crime was committed for the benefit of a street gang of which J.S. is a member in connection with the October 17, 2018, incident. The court also found the People met their burden of proving beyond a reasonable doubt

that J.S. made a terrorist threat in violation of section 422, subdivision (a) on October 19, 2018; but the court did not find that the threat was committed for the benefit of a criminal street gang.

The court ordered J.S. to be adjudged a ward of the juvenile court, ordered he be committed to the Kings County Juvenile Alternative GPS Home Detention Program for 39 days and the Kings County Juvenile Center long-term commitment program for a period not to exceed one year, but not less than 180 days, with eligibility for release on the Kings County Juvenile Alternative GPS Detention Program after completing 141 days in custody, and that he comply with various probation terms.

## DISCUSSION

J.S. challenges the sufficiency of the evidence in support of his terrorist threat conviction and gang enhancement. We reject J.S.'s challenges and conclude sufficient evidence supports the juvenile court's true finding on the terrorist threat and gang enhancement allegations.

## I.     Standard of Review

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) The same principles are applicable to a review on appeal of the sufficiency of the evidence to support a finding in a juvenile proceeding that a minor violated a criminal statute. (*People v. Roderick P*. (1972) 7 Cal.3d 801, 809.) "'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The sufficiency of the evidence to support enhancement

8.

allegations is reviewed under the same standard.  (See *People v. Wilson* (2008) 44 Cal.4th 758, 806.)

## II.     Terrorist Threat Adjudication

### A.     Applicable Law

Penal Code section 422, subdivision (a) provides in relevant part:

> "(a) Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

Accordingly, in order to prove a violation of Penal Code section 422 for making a terrorist threat, the prosecution must establish (1) that the minor "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the minor made the threat "with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.  (Pen. Code, § 422, subd. (a); see *People v. Toledo* (2001) 26 Cal.4th 221, 228.)

Penal Code "[s]ection 422 'was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others.  [Citation.]'  [Citation.]  The statute 'does not punish such things as "mere angry utterances or ranting soliloquies, however violent." [Citation.]'  [Citation.]  Instead, a criminal threat 'is a specific and narrow class of communication,' and 'the expression of an intent to inflict serious evil upon another person.  [Citation.]'  [Citation.]"  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.)

### B.   Analysis

J.S. challenges the third, fourth, and fifth elements of his terrorist threat adjudication.  He first argues his statements to S.G. on October 19, 2018, were not "'so unequivocal, unconditional, immediate and specific as to convey'" to S.G. a "'gravity of purpose and an immediate prospect of execution of the threat.'"  He asserts, "The illusory nature of [his] threat is revealed in his text exchange with [S.G.'s mother]," in which J.S. "backed down."  He argues there was no evidence of a history of animosity between J.S. and S.G. or an "immediate prospect" J.S. would make good on his threat.  Rather, J.S. argues the threat was a "'mere angry utterance'—an expression of frustration over his friend's inability or unwillingness to repay a debt."  He also contends there was insufficient evidence of an objectively reasonable basis for S.G. to "'be in sustained fear for his … safety.'"  In support, he argues there was no evidence of the precise nature and circumstances of the threat, such as J.S.'s mannerisms, affect, and actions when he made the threat.  We disagree with J.S.'s contentions.

Here, there was substantial evidence from which a reasonable trier of fact could have concluded J.S.'s threats "on [their] face and under the circumstances in which [they] were] made," were "so unequivocal, unconditional, immediate and specific as to convey to [S.G.] a gravity of purpose and an immediate prospect of execution of the threat." (Pen. Code, § 422, subd. (a).)  Officer Farr testified S.G. reported J.S. threatened to shoot him "on Home Garden Crip" if S.G. did not pay him back.  There is nothing equivocal or ambiguous about J.S.'s reported threat to shoot S.G.  (See *In re David L.* (1991) 234

10.

Cal.App.3d 1655, 1660 ["The minor's threat to shoot the victim [which, according to the testimony, was without equivocation or ambiguity], was not 'on its face and under the circumstances in which it [was] made' either conditional or in jest"]; accord, *People v. Wilson*, *supra*, 186 Cal.App.4th at p. 806 ["'A threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because it does "not communicate a time or precise manner of execution"'"]; cf. *In re George T.* (2004) 33 Cal.4th 620, 637 [threatening language in poem was ambiguous and plainly equivocal, noting "[w]hen the words are vague, context takes on added significance," and surrounding circumstances failed to show poem sufficiently conveyed immediate prospect minor would bring guns to school and shoot students].)

Additionally, here, the surrounding circumstances further evidenced the threat was intended to convey a gravity of purpose and an immediate prospect of execution of the threat rather than an "angry utterance." J.S. referenced his gang in making the verbal threat, and then made an additional threat to beat up S.G. during a text message conversation while again making numerous gang references. (See *People v. Butler* (2000) 85 Cal.App.4th 745, 754–755 [defendant's conduct and remarks including his reference to his gang membership, which impressed upon victim gravity of situation constituted criminal threat]; see generally *People v. Wilson*, *supra*, 186 Cal.App.4th at p. 807 ["'"a gravity of purpose and an immediate prospect of execution of the threat'" … "does not require an immediate ability to carry out the threat"'"; "'[W]e understand the word "immediate" to mean that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out, should the conditions not be met'"].) And, contrary to J.S.'s argument that he "backed down," there was no evidence J.S. retracted the threats or otherwise communicated that he was not serious. Indeed, J.S. admitted to Office Farr he threatened to "beat [S.G.'s] ass." On this record, we conclude sufficient evidence established the third element of J.S.'s threat adjudication.

There was also sufficient evidence from which the trial court could conclude S.G. was in sustained fear after the threats and that his fear was reasonable. As used in the statute, "sustained" has been defined to mean "'a period of time that extends beyond what is momentary, fleeting, or transitory. … The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear. [Citation.]'" (*People v. Wilson*, *supra*, 186 Cal.App.4th at p. 808; see *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) And, here, after J.S.'s verbal threat, S.G. reported the threat to his mother who, in turn, called the police. S.G. was still in fear when he later spoke to a police officer and, at the hearing, he denied any memory of the incident. S.G. also reported to Officer Farr he knew J.S. was known to be a violent gang member. On this record, we conclude substantial evidence supports the court's conclusion S.G. was in sustained fear and that his fear was reasonable under the circumstances. Accordingly, viewing the evidence in the light most favorable to the conviction, sufficient evidence supports the juvenile court's conclusion the threat against S.G. amounted to a violation of Penal Code section 422.

We reject J.S.'s first contention.

### III.    Gang Enhancement

J.S. next challenges the sufficiency of the evidence in support of the gang enhancement.

#### A.    Applicable Law

A gang enhancement applies to one who commits a felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (Pen. Code, § 186.22, subd. (b)(1); see *People v. Sanchez* (2016) 63 Cal.4th 665, 698.) To prove the enhancement applies in a given case, the crime must be demonstrated to be gang related. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Cases, however, rarely involve "direct evidence that a crime was committed for the benefit of a gang." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 411.) However, "'[e]xpert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement." (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

**B.      Analysis**

J.S. argues there was insufficient evidence the charged assault against Jorge was committed "for the benefit of" the HGC gang. He also asserts the evidence was insufficient to establish he acted with the specific intent to "benefit" the HGC gang. We disagree.

The California Supreme Court has held: "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of … a[] criminal street gang' within the meaning of section 186.22(b)(1)." (*People v. Albillar*, *supra*, 51 Cal.4th at p. 63; see *People v. Vang*, *supra*, 52 Cal.4th at p. 1048.) And here, there was expert testimony in addition to evidence of J.S.'s gang involvement and his use of gang slogans during the assault against Jorge that provided substantial evidence from which the court could have concluded J.S. committed the assault against Jorge "for the benefit of" his gang, HGC.

Indeed, there was substantial evidence J.S. was an HGC gang member or affiliate. The People presented evidence of text messages in which J.S. used gang terminology and references. They also introduced Instagram photographs of J.S., which, Investigator Kurtz opined, depicted J.S. displaying gang signs and using a gang-related caption. And, importantly, Jorge, the victim of the assault, reported J.S. repeatedly referenced HGC when he challenged Jorge to fight before assaulting him. Investigator Kurtz explained that, by doing so, J.S. was boosting his status and showed "that he's willing to put in work and he's willing to beat people up for his gang."

13.

Also, when presented with a hypothetical mirroring the facts of J.S.'s assault against Jorge, Investigator Kurtz opined that such a crime was committed for the benefit of HGC. He explained that gang members thrive on fear and beating up someone generates fear and permits a gang member to gain status within the gang. He further explained, "[T]he more status you have in a gang the more power you have and the more people respect you." Additionally, relying on the evidence presented at trial and his background, Detective Kurtz opined J.S. was an active member of HGC. On this record, we conclude there was sufficient evidence from which the court could reasonably conclude J.S. committed the assault against Jorge for the benefit of his gang. (See *People v. Albillar*, *supra*, 51 Cal.4th at p. 63 [expert's opinion crime benefited gang by enhancing its reputation for "viciousness" or violence sufficient to raise an inference that the crime benefited the criminal gang]; accord, *People v. Romero* (2006) 140 Cal.App.4th 15, 19.)

We also conclude sufficient evidence supports the juvenile court's conclusion J.S.'s assault of Jorge was committed with the specific intent to promote, further, or assist in criminal conduct by gang members. It is true that gang affiliation does not on its own prove specific intent to promote, further, or assist in any criminal conduct by gang members. (See *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199; see also *People v. Ochoa* (2009) 179 Cal.App.4th 660, 663 ["The gang enhancement cannot be sustained based solely on defendant's status as a member of the gang and his subsequent commission of crimes"].) But, here, there was other evidence, aside from J.S.'s gang affiliation, from which the trial court could reasonably infer the crime was committed with the requisite intent—namely, J.S.'s repeated reference to HGC before pursuing and assaulting Jorge, coupled with Investigator Kurtz's testimony explaining why a gang member would call out his gang's name before committing a crime. (Cf. *People v. Ochoa*, at p. 662 [gang enhancement unsupported where defendant acted alone in committing carjacking and no evidence he called out gang name, flashed gang hand

14.

signs, or otherwise committed crime for benefit of gang].) J.S.'s repeated invocation of his gang's name before the assault provided the requisite nexus from which the court could infer he had the specific intent to promote, further, or assist the gang in committing the crime. Thus, viewing the evidence in the light most favorable to the judgment, we conclude sufficient evidence supports the gang enhancement to J.S.'s assault allegation. (See *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138–1139 [lone perpetrator may be convicted of gang enhancement if felony is gang related and committed with specific intent to promote gang]; see also *People v. Margarejo* (2008) 162 Cal.App.4th 102, 110 [defendant's use of gang sign during crime evidenced specific intent to promote, further, or assist gang].)

We reject J.S.'s final contention.

## DISPOSITION

We affirm the judgment.

15.