Filed 6/12/24  P. v. Gomez-Ochoa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE DE JESUS GOMEZ-OCHOA,<br><br>    Defendant and Appellant. | G061957<br><br>(Super. Ct. No. 16CF1629)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge.  Affirmed.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin H. Urbanski and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　\*　　\*

On Father's Day in 2016, defendant Jose de Jesus Gomez-Ochoa, a member of the Delhi criminal street gang and a convicted felon, pulled his truck into an alley in Santa Ana, exited the truck holding a handgun, ran from the alley into a public street and fired multiple shots, striking and killing Eliu Gramajo (the victim), an innocent bystander who was working at his food truck.  A jury found Gomez-Ochoa guilty of first degree murder (count 1) and found true that Gomez-Ochoa committed the murder while an active participant in a criminal street gang and to further the activities of the gang within the meaning of Penal Code section 190.2, subdivision (a)(22) (section 190.2(a)(22) or gang special circumstance).[1]  The jury also found true a gang enhancement under section 186.22, subdivision (b)(1) (section 186.22(b)(1)), and firearm enhancements under sections 12022.53, subdivision (d), and 12022.5, subdivision (a).  In addition, the jury found Gomez-Ochoa guilty of possession of a firearm by a convicted felon (count 2) and found true a gang enhancement in connection with that count.

Gomez-Ochoa contends there was insufficient evidence for the jury to conclude, as part of the gang special circumstance and gang enhancement findings, that Gomez-Ochoa committed the murder to further the activities of a criminal street gang. He also contends the shooting did not benefit a gang because he killed an innocent bystander, not a rival gang member.  Gomez-Ochoa also contends the court should have stayed the sentence on count 2 pursuant to section 654 because his possession of the firearm and the actual shooting were incident to a single intent and objective and the evidence was insufficient to show he possessed the gun prior to the shooting.

---

[1]  All further statutory references are to the Penal Code.

We reject these contentions and affirm the judgment. Substantial evidence supports the jury's finding that Gomez-Ochoa committed the murder to benefit the activities of a criminal street gang in ways that were more than just reputational. We also conclude the trial court did not err in declining to stay the sentence on the gun possession charge.

FACTUAL AND PROCEDURAL BACKGROUND

The shooting occurred on South Evergreen Street (Evergreen) in Santa Ana at a location known to be disputed gang territory claimed by two rival criminal street gangs, Delhi and Locotes.[2] Gomez-Ochoa, whose gang moniker was Pee Wee/PeeWee, was a member of the Delhi gang. V.S., who was a member of the Locotes gang, lived in an apartment on Evergreen. The victim's food truck was located at or near the dividing line between what Locotes claimed as their turf and what was claimed to be Delhi turf. Other shootings had occurred in the past in this area of disputed gang turf; indeed, this was not the first murder on Evergreen or even at the same location of this particular food truck.

It was still light outside at approximately 7:00 p.m. on June 19, 2016, when V.S. exited his apartment and walked toward the victim's food truck. At trial, V.S. said he was alone outside at the time of the shooting. But in earlier interviews with police, he

_____

[2] The parties stipulated at trial that Delhi and Locotes are criminal street gangs under the law. Specifically, pursuant to stipulation, the jury was provided the following evidence: "The People and the defendant Mr. Jose Gomez-Ochoa . . . all agree and stipulate Delhi and Locotes are criminal street gangs pursuant to Penal Code section 186.22. ¶ Both Delhi and Locotes are ongoing organized groups of three or more persons whether formal or informal having as one of its primary activities the commission of one or more of the criminal acts enumerated in subdivision 186.22(e) [sic] having a common name, or common identifying sign or symbol, and whose members collectively engage in or have engaged in a pattern of criminal gang activity."

said there were multiple other Locotes gang members nearby on the street that evening, at least one of whom may have had a gun.[3]

Meanwhile, unbeknownst to him, Gomez-Ochoa was captured on video at 7:11 p.m. driving into the alley just east of Evergreen in a large four-door white pickup truck and stopping in the middle of the alley.[4] Before the truck even came to a stop, the front passenger door of the truck opened, and a man exited the passenger side and walked to the back of the truck, leaving the passenger door open. A handgun was visible in his hand. Gomez-Ochoa is depicted on the video exiting the driver's side of the truck with a gun in his hand and running down a walkway between two buildings toward Evergreen.[5] He also left the driver's door open. The man from the passenger side stayed near the truck and appeared to be acting as a lookout for Gomez-Ochoa during the shooting.

Upon reaching Evergreen, Gomez-Ochoa fired five shots with a .40 caliber gun. He then ran back to the truck and, with the passenger back inside, sped down the alley. Less than 30 seconds elapsed from the time Gomez-Ochoa exited his truck to the time he ran back to it and fled the scene. There was no evidence any of the bullets Gomez-Ochoa fired struck V.S. or any other Locotes gang members. But one of the bullets struck and killed the victim.

In recorded telephone calls made from jail by Gomez-Ochoa after the shooting, he admitted he was with someone named Tiny that day. Tiny is the gang moniker of another known Delhi gang member. Gomez-Ochoa admitted the food truck

---

[3] The tapes of V.S.'s interviews with the police were played for the jury, and the jury also was provided transcripts.

[4] The video was received into evidence and played for the jury.

[5] No witness at trial identified Gomez-Ochoa as the driver of the truck or testified they saw him shoot the gun. However, the license plate on the white truck was visible on the video and the evidence showed the truck was registered to Gomez-Ochoa and his wife. Moreover, in recorded jailhouse telephone calls following his arrest, Gomez-Ochoa admitted to the shooting and admitted it was him and his truck shown on the video.

driver he killed was "innocent." In other words, the victim was not Gomez-Ochoa's intended target.

In count 1 of an amended information filed March 16, 2022, the People charged Gomez-Ochoa with the victim's murder (§ 187, subd. (a)). The information further alleged Gomez-Ochoa intentionally killed the victim while an active participant in the Delhi criminal street gang, within the meaning of section 190.2(a)(22). Count 1 also included a section 186.22(b)(1) enhancement and firearm enhancements (§§ 12022.53(d), 12022.5(a)). In count 2, the People charged Gomez-Ochoa with unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1)). Count 2 also included a section 186.22(b)(1) allegation. The information further alleged Gomez-Ochoa suffered three prior serious and violent felony convictions within the meaning of sections 667, subdivisions (d) and (e)(2)(A) and 1170.12, subdivisions (b) and (c)(2)(A), and two prior serious felony convictions within the meaning of section 667, subdivision (a)(1). It also alleged factors in aggravation pursuant to rule 4.421(a)(1), (a)(2), and (b)(1) of the California Rules of Court.

Gomez-Ochoa was convicted on both charges, with true findings on the gang special circumstance and gang enhancements. The court sentenced him to life without the possibility of parole for the first degree special circumstance murder, plus 25 years to life to run consecutively for the firearm enhancement under section 12022.53, subdivision (d) and an additional 25 years to run concurrently under the "Three Strikes" law for count 2. Gomez-Ochoa timely appealed.

## DISCUSSION

### I.

### SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S GANG SPECIAL CIRCUMSTANCE AND GANG ENHANCEMENT FINDINGS

Gomez-Ochoa contends the evidence was insufficient to support the jury's findings that the crimes were committed for the benefit of the Delhi street gang under

5

sections 190.2(a)(22) and 186.22(b)(1).  He argues that, at most, the evidence suggested the only benefit to the gang from his conduct was reputational.  In addition, Gomez-Ochoa argues the evidence was insufficient under both statutes because the killing of an innocent victim provides no actual benefit to the gang.

Our standard of review is sufficiency of the evidence.  (*People v. Renteria* (2022) 13 Cal.5th 951, 957–958 (*Renteria*).)  We "evaluate the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Ramos* (2016) 244 Cal.App.4th 99, 104.)  Our application of this standard of review does not permit us to "reweigh the evidence; the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact." (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.)  We presume in support of the judgment every fact that could reasonably be deduced from the evidence (*People v. Kraft* (2000) 23 Cal.4th 978, 1053) and disregard any evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient veracity (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1313).  If the circumstances justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

"In 2000, California voters adopted Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998 (Proposition 21)." (*People v. Rojas* (2023) 15 Cal.5th 561, 565.)  "Proposition 21 added the gang-murder special circumstance, codified at Penal Code section 190.2, subdivision (a)(22) . . . ." (*Ibid.*)  "Under this provision, a person convicted of first degree murder is subject to the death penalty or life imprisonment without the possibility of parole if the jury finds '[t]he defendant intentionally killed the victim while the defendant was an active participant in *a criminal*

6

*street gang, as defined in subdivision (f) of Section 186.22*, and the murder was carried out to further the activities of the criminal street gang.'" (*Ibid.*)[6]

Gomez-Ochoa does not dispute the jury was properly instructed regarding the gang murder special circumstance. Specifically, the jury was told it had to decide whether the murder was "carried out to further the activities of the criminal street gang" (CALCRIM No. 736) and it was instructed that "[t]o further the activities means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (CALCRIM No. 736.)

Likewise, Gomez-Ochoa does not dispute the jury was properly instructed on the gang enhancement for counts 1 and 2 under section 186.22(b)(1).[7] The jury was told it must determine whether defendant committed the crime for the benefit of a

---

[6] In *People v. Rojas, supra,* 15 Cal. 5th 561, the California Supreme Court upheld the Legislature's narrowing of the definition of what constitutes a "criminal street gang" (*id.*, at p. 565) in section 186.22, subdivision (f) and, by extension, what it means to "further the activities of the criminal street gang" (*Rojas*, at p. 565) for purposes of the gang special circumstance. Among other things, the amendment to section 186.22, subdivision (g), in Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang by requiring that any "common benefit" be "more than reputational." (§ 186.22, subd. (g); as amended by Stats. 2021, ch. 699, § 3, eff. Jan. 1, 2022.)

[7] "There are two prongs to the gang enhancement under section 186.22, subdivision (b)(1), both of which must be established by the evidence." (*People v. Franklin* (2016) 248 Cal.App.4th 938, 948.) "The first prong requires proof that the underlying felony was 'gang-related,' that is, the defendant committed the charged offense 'for the benefit of, at the direction of, or in association with any criminal street gang.'" (*Ibid.*; § 186.22(b)(1).) "The second prong 'requires that a defendant commit the gang-related felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members."'" (*Franklin*, at p. 948; § 186.22(b)(1).) "'[T]he prosecution's evidence must permit the jury to infer that the "gang" that the defendant sought to benefit, and the "gang" that the prosecution proves to exist, are one and the same.'" (*Franklin*, at p. 948.)

7

criminal street gang and whether defendant intended to assist, further, or promote criminal conduct by gang members.  (CALCRIM No. 1401.)

As with the jury instruction for section 190.2(a)(22), the jury was instructed under section 186.22(b)(1) that "[t]o benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational.  Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  (CALCRIM No. 1401.)

Here, there was substantial evidence at trial that Gomez-Ochoa was a member of and an active participant in the Delhi criminal street gang on the day of the shooting, he committed the murder for the benefit of Delhi, and he fired the shots intending to assist, further, or promote criminal conduct by gang members.  Gomez-Ochoa had Delhi-related tattoos and admitted he was a member of Delhi.  The jury was informed by stipulation that Gomez-Ochoa had previously stated under penalty of perjury that (1) in 2011, he actively participated in the Delhi criminal street gang with knowledge that its members engage in and have engaged in a pattern of criminal gang activity and he willfully and unlawfully promoted, furthered, and assisted in conduct by members of Delhi, (2) in 2012, he actively participated as a member in Delhi, which he knew to be a criminal street gang whose members have engaged in a pattern of felony criminal gang activity, and (3) he did willfully promote, further and assist in conduct by Delhi members acting in association with and for the benefit of Delhi.  At the time of the shooting, Gomez-Ochoa was with another Delhi gang member, who acted as a lookout for Gomez-Ochoa while he committed the shooting.[8]  Gomez-Ochoa arrived at the alley with a gun

_____

[8]  Gomez-Ochoa's argument that there is no "actual evidence" he was accompanied by another gang member ignores both the videotape showing someone with him, acting as a lookout, and his own jailhouse admission that person was Tiny.  In the recorded jailhouse

already in his possession.  His lookout also had a handgun.  The shooting occurred in disputed territory claimed by both Gomez-Ochoa's gang and its rival Locotes gang.  The victim's food truck was on Locotes claimed turf, and near the boundary line of Delhi and Locotes claimed territory.  The street around the food truck was marked extensively with Locotes graffiti.  It was light outside at the time of the shooting and V.S., who was outside near the food truck at the time of the shooting, was a member of the Locotes gang.  Other Locotes gang members were also nearby.[9]  Gomez-Ochoa admitted the victim was "innocent"—in other words, he was not the person Gomez-Ochoa intended to shoot.

From all this evidence, the jury could reasonably infer Gomez-Ochoa was specifically targeting one or more rival Locotes gang members when he fired five shots in disputed gang territory, and in doing so he intended to act on behalf of and for the benefit of the Delhi criminal street gang.  Even without any testimony from a gang expert, the jury could reasonably conclude the crimes were carried out to provide a common benefit to members of the Delhi gang that was more than reputational, in that Gomez-Ochoa targeted one or more rival gang members, which is one of the specific non-reputational benefits enumerated both in section 186.22, subdivision (g) and in the jury instructions

conversation, Gomez-Ochoa asked the other person on the call "where is he at?"  When asked by the other person to whom he was referring, Gomez-Ochoa responded, "'DIENTON' el-el-el 'TINY.'"  Then, the other person asked: "I don't know.  Was he also with you?"  Gomez-Ochoa responded, "[y]es, Dude, but . . . they just have photos but you can't really see his face . . . so, it's good. . . ."  Before that phone call, the police had shown Gomez-Ochoa still photos from the video footage of the alley.  From this, the jury could reasonably conclude Gomez-Ochoa identified Tiny as the other person with him in the alley at the time of the shooting.  Gomez-Ochoa's suggestion that he was "more likely referring to some later time when '20 cops [were] behind us'" effectively asks us to reweigh the evidence, which we cannot do.  (See *People v. Stewart, supra,* 77 Cal.App.4th at p. 790.)

[9]  The jury was free to reject as not credible V.S.'s trial testimony that he was the only Locotes member near the victim's food truck and instead believe his earlier statements to the police that other Locotes gang members were there as well.

for both the gang special circumstance and the gang enhancement. (See CALCRIM Nos. 736, 1401.)

The People called a gang expert to testify at trial, who testified about gang culture and the benefits that inure to a gang when violence is committed against a rival gang member. In addition to the respect that comes from violence against a rival gang, particularly in the other gang's claimed territory, the expert testified about non-reputational benefits to a gang when one of its members kills a rival gang member, including eliminating one of the members of the rival gang and intimidating the other gang's members. This is further evidence from which the jury could have concluded Gomez-Ochoa shot at V.S. and/or other Locotes gang members near the victim's truck to benefit or further the activities of the Delhi gang, including for the purpose of targeting and eliminating rival gang members.

Gomez-Ochoa relies on *Renteria, supra,* 13 Cal.5th, for the proposition that "[w]ithout more, generalized expert opinion that commission of a particular crime enhances the gang's power in the community by increasing its reputation for violence" (*id*. at p. 966) is not enough to establish "that the defendant committed a particular violent crime for the benefit of the gang and with the intent to facilitate known criminal activity by other gang members." (*Id*. at p. 967.)[10] Gomez-Ochoa argues the evidence here was insufficient to support either the gang special circumstance finding or the gang enhancement findings because the opinion offered by the People's gang expert "established, at most, that any benefit was nothing more than reputational." We disagree.

---

[10] The *Renteria* court explicitly did not address "any questions about the effect of" Assembly Bill No. 333 (2021–2022 Reg. Sess. (Stats. 2021, ch. 699, § 3)), which added to section 186.22, subdivision (g) the requirement that the "common benefit" to members of a gang must be "more than reputational." (*Renteria, supra*, 13 Cal.5th at p. 961, fn. 6.) Instead, the court "focus[ed] on the law as it existed before the enactment of Assembly Bill 333." (*Ibid*.)

The facts of *Renteria* are readily distinguishable. In that action, Renteria, the defendant, walked through a neighborhood late one night "and fired a gun at a house. Then, after a dog barked next door, Renteria fired the gun at that house, too." (*Renteria, supra*, 13 Cal.5th at p. 957.) Although the evidence at trial "demonstrated that Renteria was a gang member at the time of the shootings" the Supreme Court found the evidence "did not support the inference that Renteria committed the shootings for the gang's benefit, with the specific intent to promote the criminal activities of gang members, *as opposed to acting for his own, personal reasons*." (*Id*. at p. 973, italics added.) Moreover, although there was evidence that someone was with the defendant when he shot at the houses, the evidence "did not establish who that person was or whether he or she was a gang member. The record therefore lacks substantial evidence that Renteria acted with another gang member in committing these offenses." (*Id*. at p. 970.) The court therefore concluded, "[t]his was a lone-actor case" and it analyzed the sufficiency of the evidence "on the premise that Renteria acted alone." (*Ibid*.)

The *Renteria* court acknowledged that "in cases where multiple gang members were involved in the charged offense, the fact of their joint involvement in a crime often provides sufficient evidence of association and benefit, as well as circumstantial evidence of an intent to promote the criminal activity of other gang members, in connection with the very same criminal offense." (*Renteria, supra,* 13 Cal.5th at p. 963.) But, it continued, "cases involving lone actors pose different problems. Where there is no proof the defendant acted in association with or at the direction of the gang, the prosecution cannot rely on the joint nature of the offense to establish either the requisite benefit to the gang or the specific intent to promote the criminal activity of gang members. In a lone-actor case, a different showing is necessary to satisfy those requirements." (*Id*. at pp. 963–964.)

Here, unlike in *Renteria*, there was more linking Gomez-Ochoa's crimes to the Delhi criminal street gang than generalized expert testimony. (*Renteria, supra*, 13

11

Cal.5th at p. 966.) Unlike the defendant in *Renteria*, Gomez-Ochoa was not a lone actor. He and his fellow Delhi gang member, Tiny, drove together into the alley, each armed with a handgun. They immediately got out of the truck with their weapons in hand and, with Tiny staying behind to cover Gomez-Ochoa's back, Gomez-Ochoa ran to Evergreen, fired five bullets into the area where V.S. and other rival Locotes gang members were on the street, then dashed back to his truck and fled the scene with Tiny. Moreover, the area where Gomez-Ochoa fired his weapon was not some random street or building; it was disputed gang territory claimed by both Locotes and Delhi. Given Gomez-Ochoa's admission that the victim was not his intended target, the jury could have reasonably inferred he was targeting one or more of the rival Locotes gang members who were on the street nearby. In addition, Gomez-Ochoa previously admitted under penalty of perjury that Delhi gang members engaged in criminal gang activity, he was aware of at least the type of criminal activity the Delhi gang members pursue, and he willfully promoted, furthered, and assisted in such conduct for the benefit of the gang.[11] Even if we were to disregard the testimony from the People's gang expert, there is substantial evidence to support the jury's gang special circumstance and gang enhancement findings.

Gomez-Ochoa also argued the evidence does not support either the gang special circumstance or the gang enhancement because only an innocent bystander was

[11] Contrary to Gomez-Ochoa's argument, the lack of evidence that he made his gang affiliation known or wore gang-identifying clothing at the time of the shooting does not negate all this evidence or render it legally insufficient. Although such conduct would have constituted more direct proof of Gomez-Ochoa's intent, the law has long recognized that direct evidence of an actor's intent is difficult to come by and is not required; intent can be—and frequently is—inferred based on the surrounding facts and circumstances, including a party's conduct. "Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially." (*People v. Thomas* (2011) 52 Cal.4th 336, 355.) "[W]e routinely draw inferences about intent from the predictable results of action. We cannot look into people's minds directly to see their purposes. We can discover mental state only from how people act and what they say." (*People v. Margarejo* (2008) 162 Cal.App.4th 102, 110.)

12

killed, and the Delhi gang did not derive any benefit from that. Gomez-Ochoa reasons the shooting could only have benefitted Delhi if he had actually succeeded in killing one or more members of the rival Locotes gang.

This argument fails because the focus is on the *intent* of the criminal conduct, not the outcome. (§ 190.2(a)(22); see *People v. Arce* (2020) 47 Cal.App.5th 700, 714.) In *People v. Shabazz* (2006) 38 Cal.4th 55, the defendant shot into a car intending to kill the passenger, but the passenger ducked, and the defendant shot and killed the driver instead. (*Id*. at p. 60.) The defendant contended the gang special circumstance did not apply because he only intended to kill the passenger, not the driver. (*Id*. at p. 61.) The California Supreme Court rejected this argument, ruling that the doctrine of transferred intent applied to the intent to kill requirement contained in the gang special circumstance statute. (*Id*. at pp. 62–66.) Therefore, the gang special circumstance applied to a defendant who acted with "an intent to kill that resulted in the killing of any individual." (*Id.* at p. 59.)

The same substantial evidence that supported the jury's finding on the gang special circumstance for count 1 also supports the jury's true finding for the gang enhancements for counts 1 and 2. Contrary to Gomez-Ochoa's contention, there was substantial evidence from which the jury could have found he was with another gang member at the time of the shooting, who acted as a lookout while he committed the killing in disputed gang territory, firing multiple shots into an area where multiple rival gang members were on the street. The jury could reasonably have concluded, based on all of the evidence presented to it, that Gomez-Ochoa possessed the firearm for the benefit of the Delhi criminal street gang and, by targeting rival Locotes gang members, particularly in disputed gang territory, he intended to assist, further, or promote criminal conduct by gang members. (*Renteria, supra*, 13 Cal.5th at p. 964.)

13

## II.

### THE TRIAL COURT DID NOT ERR BY DECLINING TO STAY
### SENTENCING FOR COUNT 2, POSSESSION OF A FIREARM

The jury convicted Gomez-Ochoa of count 2, possession of a firearm by a convicted felon. Section 29800, subdivision (a)(1) provides that anyone who has been convicted of a felony who "owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." The parties stipulated Gomez-Ochoa was previously convicted of a felony offense. The court sentenced Gomez-Ochoa on this count to a concurrent term of 25 years to life by operation of the Three Strikes law. (§§ 667, subds. (b)–(i), 1170.12.)

Gomez-Ochoa contends the trial court should have stayed the sentence on count 2 under section 654 because the conduct underlying that charge was the same as the conduct underlying the firearm enhancement attendant to the murder charge. (§ 12022.53, subd. (d).) Specifically, Gomez-Ochoa argues there was no evidence he possessed the firearm before the shooting, and the possession of the firearm and the shooting were incident to a single intent and objective.

Pursuant to section 654, subdivision (a), "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." The "'act or omission'" may be either "a discrete physical act [or] a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) "Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry." (*Ibid.*) First, we "examine the facts of the case to determine whether multiple convictions are based upon a single physical act." (*Id.* at p. 312.) "If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct

14

reflects a single '"intent and objective"' or multiple intents and objectives." (*Id*. at p. 311.)

Under section 654, where a defendant harbors '"multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct."' (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) '"[W]here the evidence shows a possession [of a firearm] distinctly antecedent and separate from the primary offense,"' punishment for the offense and for the unlawful possession is permissible. (*People v. Bradford* (1976) 17 Cal.3d 8, 22.) Accordingly, "section 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm." (*People v. Jones*, *supra*, at p. 1145.)

'"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination."' (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378.) '"Its findings will not be reversed on appeal if there is any substantial evidence to support them."' (*Ibid*.)

Here, the trial court concluded Gomez-Ochoa's unlawful possession of the gun while a convicted felon was based on actions separate and apart from the actual shooting as to which the firearm enhancement applied and that section 654 therefore did not apply. Substantial evidence supports that conclusion. The evidence showed Gomez-Ochoa was already in possession of the gun when he arrived at the alley near Evergreen; he did not somehow acquire possession of the gun at the moment of the shooting. We agree that, under these circumstances, section 654 does not apply.

15

DISPOSITION

The judgment is affirmed.

GOODING, J.

WE CONCUR:

GOETHALS, ACTING P. J.

SANCHEZ, J.